[No. 31835.   Department One.   June 12, 1952.]

SIGNAL OIL COMPANY, *Respondent,* v. A. STEBICK, *Appellant.*[1]

[1]Reported in 245 P. (2d) 217.

*William R. Garland, Marion Garland, Jr.,* and *Gerard N. Fisher,* for appellant.

*Helsell, Paul & Fetterman* and *William E. Clancy, Jr.,* for respondent.

SCHWELLENBACH, C. J.—This is an appeal from a judgment in favor of the plaintiff in an action of unlawful detainer.

The respondent, Signal Oil Company, was lessee of certain premises in the city of Bremerton, Washington, a portion of which was a vacant lot. July 1, 1940, Signal Oil Company, as lessor, entered into a sublease agreement with Stebick, as sublessee, covering the vacant portion of the above-mentioned property. The sublease, which was to run until November, 1942, provided that, in the event the lessor exercised its option to renew its original lease with the owner of the property, then the lessor granted to Stebick, the sublessee, an extension of the sublease during the time the original lease was in effect with the owner. The extension was granted by the owner to Signal Oil Company in 1947 for a period of ten years.

The sublease to Stebick provided for a monthly rental of fifteen dollars payable in advance on or before the first day of the month during the continuance of the tenancy. It also provided:

"Lessee agrees: . . . to use the premises for no other purpose than to conduct an automobile sales business; to continuously operate said business; . . ."

Upon the execution of the lease, Stebick constructed a frame building on the premises. It was of single construction without plaster and did not conform to the requirements of the Bremerton building code. The city building inspector talked to Stebick several times about plastering the building and making it fire-resistant. Stebick promised to do so, but never did. Later, he converted the building into a repair shop for automobiles, and the inspector "vacated" it. Subsequently, Stebick sublet the building to certain parties for use as an upholstering shop, and later to other parties for a cabinet shop. The building inspector "vacated"

the building as to both operations because of violation of building codes. The premises had not been used for an automobile sales business, as provided in the lease, for three or four years prior to the trial.

October 9, 1950, Signal prepared a notice to Stebick informing him that he had failed to perform the condition of the lease quoted above, and notifying and requiring him in the alternative, to perform such condition within ten days after service of the notice upon him, or to surrender the property. The notice was personally served on Stebick October 21st. The notice not having been complied with, the summons and complaint in this unlawful detainer action was signed October 31st. However, the complaint was not filed until January 8, 1951, and was not served on the defendant until January 12, 1951.

Defendant, in his answer, after admitting and denying certain allegations in the complaint, set out four affirmative defenses and cross-complained to recover alleged overpayments of rent. At the trial, the court struck affirmative defenses Nos. 2 and 3.

Judgment was entered canceling and terminating the lease, awarding possession to the plaintiff, and ordering that a writ of restitution be issued, and dismissing the cross-complaint with prejudice. Defendant has appealed.

In view of our disposition of the case, we find it necessary to discuss only the questions raised by appellant's first and third assignments of error, in that the court erred in finding that appellant's first affirmative defense was not proved; and that the court erred in not allowing appellant to recover for alleged excessive rentals paid over, as alleged in his cross-complaint.

The first affirmative defense alleged that the plaintiff waived a breach of the lease by the acceptance of rent prior and subsequent to the alleged breach.

We have no hesitancy in concluding that appellant breached the covenant in the lease in which he agreed that he would use the premises for no other purpose than to conduct an automobile sales business and to continuously operate said business. Our primary problem is to determine

whether or not respondent waived such breach by the acceptance of rent after the grounds for forfeiture were established.

In *Wilson v. Daniels,* 31 Wn. (2d) 633, 198 P. (2d) 496, we said:

"If the landlord accepts rent with full knowledge of a breach of the terms of a lease, he waives his right to declare a forfeiture for such breach. If, under the provisions of the lease, rent is paid in advance, the landlord is not prevented from declaring a forfeiture for a breach occurring subsequent to the payment of rent and during the term for which the rent is paid. The payment of rent merely gives the tenant the right of possession of the premises during the term, but it does not, during that term, give him the right to violate other provisions of the lease. Although the acceptance of rent waives the right to declare a forfeiture for prior breaches, it does not operate as a waiver of a continuance of the breaches or of any subsequent breaches."

In that action, as in this, resort was had to the statutory remedy of unlawful detainer under the provisions of Rem. Rev. Stat., § 812(4) [P.P.C. § 55-5]. (Note: We do not cite RCW 59.12.030(4) for the reason that its language is a departure from the language contained in Rem. Rev. Stat., § 812(4).) We held that, under the statute, at the time the notice is served, the tenant must then be in violation of the provisions of the lease enumerated in the notice.

Assuming, in the present case, that the rent was paid in advance October 1st, the tenant Stebick was thereby given the right of possession during the term for which the rent was paid, or until November 1st. However, between October 1st and October 21st he had breached a condition of the lease. October 21st, he was served with a notice, in the alternative, to perform such condition or surrender the property. He did not do either. It then became necessary for the landlord, in order to obtain possession, to institute an unlawful detainer action by filing and serving on Stebick a summons and complaint. Although the complaint was signed October 31, 1950 (the date that the right of forfeiture arose), it was not filed until January 8, 1951, and both the summons and complaint were served on the defendant

January 12, 1951. The action was therefore commenced January 12, 1951. *Big Bend Land Co. v. Huston,* 98 Wash. 640, 168 Pac. 470.

██ If, after giving notice in the alternative to either comply with the provisions of the lease or vacate the premises, the landlord accepted rent from the tenant, for rental periods subsequent to the breach, it thereby waived the breach relied upon in the notice of October 21, 1950, and a new notice would then become necessary. In *Batley v. Dewalt,* 56 Wash. 431, 105 Pac. 1029, in holding that the acceptance of rent from the assignee of the lease constituted a waiver of a covenant against assignment, we said:

"As soon as they accepted rent in advance from the assignees, with full knowledge of all the facts, the right to declare a forfeiture was waived as fully and completely as by the written consent provided for in the lease itself. Such is the rule announced by this court, and the rule is amply supported by authority. [Citing cases.]"

The question arose again in *Field v. Copping, Agnew & Scales,* 65 Wash. 359, 118 Pac. 329, where this court restated the rule:

"The acceptance of rent *eo nomine* is ordinarily a recognition of the continuance of the tenancy, and where it is accepted after and with knowledge of the act of forfeiture by the tenant, it is a waiver of the forfeiture."

See, also, 16 R.C.L. 1132, Landlord and Tenant, § 653, *et seq.*; 32 Am. Jur. 749, Landlord and Tenant, § 883.

The rule with respect to a continuing breach is well stated in 51 C.J.S. 708, Landlord and Tenant, § 117 d. (2):

"Where the cause of forfeiture is a continuing breach or the breach of a continuing covenant, such as the breach of a covenant as to the use of the premises, . . . · the waiver of one breach, as by the acceptance of rent accruing after the breach, does not destroy the breached condition or covenant, or waive subsequent breaches thereof, such waiver discharging only the particular breach."

In *Wilson v. Daniels, supra,* at page 644, we stated the effect of this rule when the action was brought under the unlawful detainer statute:

"Having in mind that these statutes are strictly construed, and that they are designed to hasten the recovery of possession, we are of the opinion that, when the landlord accepts the rent, with knowledge of prior breaches, thereby waiving his right to declare a forfeiture of the lease because of such prior breaches, he also waives his right to rely on such prior breaches as a basis for setting in motion his statutory remedy of unlawful detainer. He must ·wait until the old breaches continue or new ones occur."

It follows, therefore, that the waiver applies to the notice of forfeiture as well as to the breach.

■ We now turn to the factual question of whether respondent accepted rent under circumstances which amounted to a waiver under the foregoing authorities. The lease in question was arranged by F. W. Steinhart, of Bremerton, who is the agent-distributor for Signal Oil Company. In 1947, when the original lease from Tempio, the owner of the property, to Signal Oil Company was up for renewal, Steinhart told Stebick that he would have to pay him (Steinhart) thirty dollars a month rental, rather than the original fifteen dollars, or the Tempio-Signal lease would not be renewed. To this Stebick agreed. From then on, Stebick paid Steinhart thirty dollars per month rent and Steinhart remitted fifteen dollars to Signal Oil. At times Stebick failed to make payments, and Steinhart, in the name of Kitsap Petroleum, sued him and recovered judgment. The company billed Stebick each month for fifteen dollars rent, and Steinhart remitted that sum each month to the company. The record shows the following testimony by Mr. Steinhart:

"A. Mr. Stebick, since he's been in there, I have had to pay his rent every month for the last ten or twelve years, and generally collect from him for Signal Oil—I pay Signal Oil in cash ·and Mr. Stebick makes out checks for it. I, in turn, endorse them to Signal Oil by F. W. Steinhart and Kitsap Petroleum. Q. In other words, you are acting as agent for the Signal Oil Company? A. I am agent and distributor. Q. And you collect the rents for the benefit of the Signal Oil Company? A. No, I collect the rent for it and part of it is for me, since the check is for me and for Kitsap Petroleum and Signal Oil. Q. So you figure $15 for Steinhart and pay $15 over as agent for Signal Oil. A. Yes."

He also testified:

"Q. Do they have a bill sent out directly by the office in Seattle? A. Everything goes through our Seattle office. Q. And that bill is sent to Mr. Stebick? A. Yes. Q. And do you know what rental is charged on those bills? A. $15 a month. Q. And you know the date upon which the last bill was sent? A. He is still sending them. I am still paying them. Q. You have paid them? A. Up to date. Q. Up to date? That is, today, the last rent date? A. First of the month. Q. First of the month? A. First of March."

Respondent relies upon Steinhart's testimony that he pays Signal one hundred thirty-five dollars per month rent for the corner; that seventy-five dollars is paid by the service station; fifteen dollars is paid by Stebick, and that he (Steinhart) absorbs the balance. Respondent contends that the fifteen dollars per month for Stebick is an obligation which Steinhart is compelled to pay to the company, and that it receives that money, not as a rental payment by Stebick, but as a part of Steinhart's obligation. This amounts to a contention that appellant has not been paying his rent under the lease. We ask this question: Could Signal Oil, as lessor, at any time since the lease was entered into, have commenced an action of unlawful detainer against Stebick, after having served notice on him to pay rent within three days or surrender the premises? We are satisfied that it could not have done so because the rent had been paid.

Respondent leased the premises to appellant at a monthly rental of fifteen dollars. It billed Stebick for the rental the first of each month. It received and accepted through Steinhart, its agent (who collected from Stebick for Signal Oil), the fifteen dollars monthly rental up to the time of trial. Having accepted the rent for November, December and January, when it commenced this action, it waived the breach of the terms of the lease relied upon in its notice of October 21st, and that notice, since it referred only to a breach which had been waived, became a nullity.

In his third assignment of error, with respect to his cross-complaint, appellant contends that the oral agreement between appellant and Steinhart, whereby appellant agreed

to pay an additional fifteen dollars per month, was invalid as an oral modification of a written lease because it was not in writing, and that he should recover back the additional amounts paid. The record clearly shows that the agreement to pay the additional fifteen dollars per month rent was solely between Steinhart and appellant, and that these additional payments were made to Steinhart for his benefit and not for the benefit of the Signal Oil Company. The company continued to bill appellant for fifteen dollars per month rental. Appellant had notice of this and knew, or should have known, that the company was not claiming or collecting more than the amount agreed upon in the lease. This is an action by the Signal Oil Company, as lessor, against Stebick, as lessee, and Stebick cannot cross-complain against the company for any overpayments he may have made to Steinhart.

That part of the judgment dismissing the cross-complaint is affirmed, and that part canceling and terminating the lease and awarding possession to respondent is reversed. Appellant will recover costs of this appeal.

GRADY, WEAVER, and OLSON, JJ., concur.

MALLERY, J. (dissenting in part)—I dissent from that part of the opinion which affirms the dismissal of the cross-complaint. Overpayments to an agent may be recovered from the principal. I concur with the opinion otherwise.

---

July 18, 1952. Petition for rehearing denied.