958 P.2d 327 (1998)
HOUSING RESOURCE GROUP, dba The Graham/Terry Apts., Respondents,
v.
Kevin PRICE, Appellant.
No. 38962-9-I.
Court of Appeals of Washington, Division 1.
May 18, 1998.
Publication Ordered June 23, 1998.
*329 Hong T. Tran, NW Justice Project, Seattle, for Appellant.
Richard C. Cohan, Seattle, for Respondents.
*328 BAKER, Judge.
Under a federal regulation governing subsidized housing leases, a landlord must provide a tenant written notice at least 60 days before the beginning date of a new lease term. In this appeal from an order terminating Kevin Price's tenancy, we hold that the federal regulation does not apply because Price has not shown that a change in his rent contribution constituted a new lease. He was obligated to pay the rent increase, and his failure to do so resulted in an unlawful detainer. Accordingly, we affirm.

I
Kevin Price was a tenant at Graham/Terry Apartments. Housing Resource Group (HRG) owns and manages the apartments. Price participated in the Seattle Housing Authority's (SHA) Section 8 Program, which is a federally funded subsidized housing program through the Housing and Urban Development. In this program, SHA contracts with dwelling owners to provide housing assistance for tenants.
A dispute arose when HRG increased Price's monthly rent contribution from $127 to $139. SHA calculated his portion of the rent and mailed a lease to HRG in September 1995, which set the rent contribution at $139, effective September 1, 1995. HRG delivered the lease to Price on October 2, 1995.[1] He signed and returned the lease to SHA in March 1996.
Price continued to pay $127 a month after October. HRG delivered to him four three-day notices to pay or vacate the premises during the following six-month period. The notices stated his $139 portion of the rent and the outstanding balance from prior months. When he tendered $139 rent in April, HRG rejected it and delivered two more three-day notices that month.
Finally, HRG brought an unlawful detainer action to terminate Price's tenancy and to recover his unpaid rent. At a revision hearing, the trial court found that Price was aware of his overdue rent, but willfully failed to pay the full amount or to vacate, and thus was unlawfully detaining the premises. It ordered judgment in favor of HRG for unpaid rent, attorney fees and costs, and lifted the prior stay on the Commissioner's writ of restitution restoring possession of the premises to HRG.

II
Price's primary argument on appeal is that HRG failed to comply with federal regulations governing federally subsidized housing leases. He argues that the new lease was invalid because HRG did not provide a written notice at least 60 days before the beginning date of the new lease as required by the regulations. He argues, therefore, that the prior lease continued in effect, with a rent contribution of $127 a month. To support his position, he cites 24 C.F.R. § 982.309(e)(2):
(e) New lease or revision.
. . . .
(2) The owner may offer the family a new lease, for a term beginning at any time after the initial term. The owner must give the tenant written notice of the *330 offer, with a copy to the HA, at least 60 calendar days before the proposed beginning date of the new lease term. The offer must specify a reasonable time limit for acceptance by the family.
Interpretation of the regulation presents a question of law.[2] In reviewing the plain language of the regulation,[3] section 982.309(e)(2) is limited to a landlord's offer of a new lease. To fall within this section, Price must show that HRG made an offer of a new lease. If HRG made such an offer, the regulation required it to provide Price 60 days written notice before the beginning date of the proposed new lease term. However, Price has not pointed to any evidence in the record showing that HRG made an offer of a new lease. Rather, he appears to argue that his rent increase constituted a new lease. But, he has failed to provide any authority to support the position that his increased rent constituted a new lease. Indeed, the court in District of Columbia v. Suydam[4] reached the opposite conclusion. There, the court held that a change in rent, but otherwise leaving the terms of the previous subsidized housing lease unchanged, did not constitute a new lease, and thereby operate as a surrender of an existing tenancy, so as to bar the landlord from evicting the tenant based on the failure to pay rent under the prior lease.[5]
Similarly, SHA merely increased Price's monthly rent contribution from $127 to $139, leaving the terms of his previous lease unchanged. The parties did not dispute that the lease continued with the same rights and obligations as before, except for the rent change. Because Price has not provided any countervailing authority or pointed to any evidence in the record showing that HRG made an offer of a new lease, we hold that his rent change alone did not constitute a new lease for purposes of applying section 982.309(e)(2). Therefore, the regulation does not apply in this case.[6]

III
A. Lease Interpretation
In order to resolve the remaining issues, we apply Washington law. Because the terms of Price's lease are unambiguous, we are required to apply their plain meaning.[7]
According to the lease, SHA had authority to change Price's portion of the rent.
3. RENT
. . . .
B. The portion of the Contract Rent payable by the Tenant ("Tenant Rent") shall be an amount determined by the Housing Authority in accordance with HUD regulations and requirements. The amount of the Tenant Rent is subject to change as determined by the Housing Authority during the term of the Lease. Any change in the amount of the Tenant Rent will be stated in a written notice by the Housing Authority to the Tenant and the Landlord stating the new amount and the effective date of the change. Initially and until such change the Tenant agrees to pay $139.00 per month to the Landlord as the Tenant Rent.
The lease clearly contemplated a change in Price's portion of the rent. Section 3.B. provides that SHA may change Price's portion of the rent by stating the new amount in a written notice to him. SHA properly followed the procedure set out in the lease when it changed his rent. It sent to HRG *331 and delivered to Price a written notice of the new amount in the form of the lease itself, and he received it on October 2.
B. Type of Tenancy
Under the Residential Landlord-Tenant Act of 1973, which regulates almost every aspect of the landlord-tenant relationship in Washington,[8] a lease for an indefinite period of time with monthly rent reserved is construed as a month to month tenancy.[9] The lease states that the term "shall continue" until one of a number of affirmative acts is taken by the tenant, landlord, or the housing authority.[10] Thus, the term of the lease was indefinite. The lease also stated that rent was due in advance on the first day of each calendar month. Thus, Price's tenancy was month to month.[11]
C. Effective Date of Rent Increase
In a month to month tenancy, monthly rent may be increased upon written notice at least 30 days before the beginning of any rental period.[12] "The tenant shall conform to all reasonable obligations or restrictions, whether denominated by the landlord as rules, rental agreement, rent, or otherwise[.]"[13]
The copy of the lease delivered to Price on October 2, 1995, operated as written notice that his rent was increasing. By December 1the beginning of the next term of his month to month tenancy following 30 days noticethe increased rent took effect. Even though Price had not yet signed the lease, he continued to occupy the premises. Thus, he was obligated to pay $139 per month starting from December 1995.
D. Proper Notice
The unlawful detainer statute authorizes a summary proceeding to resolve the right to possession of property.[14] The statute provides a method of process, and compliance with the method is jurisdictional.[15] The statute authorizes a three-day written notice to pay or vacate the premises for a tenant's default in paying rent.[16]
We reject Price's contention that the trial court lacked jurisdiction when HRG failed to provide a ten-day written notice. The unlawful detainer action was properly based on his default in paying rent because he failed to tender the full amount after December 1995, the effective date of his rent increase. Therefore, the three-day notice was the proper form of notice under the statute. The court properly exercised subject matter jurisdiction when it terminated his tenancy based on his failure to pay or to vacate the premises within three days of the notice.
E. Non Waiver of Rent
The well established rule in Washington is that if a landlord accepts rent with knowledge of a prior breach of a lease covenant, the landlord waives the right to *332 evict based on that breach.[17] However, a "landlord does not waive defaults in rent by accepting rent after a three-day notice if he applies the receipts to earliest rent first and there is still some rent owing for the period before the notice."[18]
We reject Price's argument that each time HRG accepted his rent after issuing a three-day notice, it waived its right to evict him. The record clearly shows that HRG applied his rent to the earliest obligation first. The three-day notices apprised him of his $139 monthly rent and his carry over balance from prior months.[19] His arrearage continued to increase as he underpaid each month, and he still owed a past due amount for the period preceding the final three-day notice. Thus, HRG did not waive its right to evict him when it accepted his partial rent.
In sum, we hold that Price has not shown that section 982.309(e)(2) applies to his rent increase. Applying Washington law, SHA had authority under the lease to change his rent contribution upon written notice. He received notice and continued to occupy the premises. His rent increase became effective. Thus, his failure to pay the full amount of rent since that date provided grounds for an unlawful detainer action. Because he neither paid nor vacated the premises within three days after receiving a notice, the trial court properly found him guilty of unlawful detainer. Accordingly, we affirm.
Affirmed.
COX and WEBSTER, JJ., concur.
NOTES
[1] Price had not assigned error to this finding of fact. An unchallenged finding of fact is considered a verity on appeal. Levine v. Jefferson County, 116 Wash.2d 575, 581, 807 P.2d 363 (1991).
[2] Oregon Envtl. Council v. Kunzman, 817 F.2d 484, 493 (9th Cir.1987).
[3] See Pacific Wire Works, Inc. v. Department of Labor & Indus., 49 Wash.App. 229, 235, 742 P.2d 168 (1987) (administrative rules are given their plain, ordinary, and common meaning).
[4] 591 A.2d 856 (D.C.1991).
[5] Suydam, 591 A.2d at 857-58.
[6] We note that neither party has adequately briefed the application of the federal regulations to the facts of this case. Price merely cited them in his brief while HRG suggested that we ignore their mandatory language. Because this is an inappropriate case for establishing precedent on the application of the federal regulations, we forgo publishing this opinion.
[7] Corbray v. Stevenson, 98 Wash.2d 410, 415, 656 P.2d 473 (1982) (unambiguous lease terms must be given their plain meaning, and reviewing courts should not, under the guise of interpretation, make another or different lease for the parties).
[8] Cranwell v. Mesec, 77 Wash.App. 90, 105 n. 15, 890 P.2d 491, review denied, 127 Wash.2d 1004, 898 P.2d 308 (1995); RCW 59.18.
[9] RCW 59.18.200; London & San Francisco Bank v. Curtis, 27 Wash. 656, 658, 68 P. 329 (1902).
[10] 2. TERM OF LEASE

The term of the Lease shall begin on September 1, 1995 and shall continue until (1) a termination of the Lease by the Landlord in accordance with Section 9.A. and C., (2) a termination of the Lease by the Tenant in accordance with the Lease or by mutual agreement during the term of the Lease, or (3) a termination of the Contract by the Housing Authority.
[11] The parties agreed that the prior lease was also for an indefinite term.
[12] RCW 59.18.140 ("after thirty days written notice... a new rule of tenancy including a change in the amount of rent may become effective upon completion of the term of the rental agreement or sooner upon mutual consent.").
[13] RCW 59.18.140.
[14] Heaverlo v. Keico Indus., Inc., 80 Wash.App. 724, 728, 911 P.2d 406 (1996) (citing RCW 59.12).
[15] Housing Auth. of the City of Everett v. Terry, 114 Wash.2d 558, 564, 789 P.2d 745 (1990).
[16] RCW 59.12.030(3); Sprincin King Street Partners v. Sound Conditioning Club, Inc., 84 Wash. App. 56, 63, 925 P.2d 217 (1996).
[17] Signal Oil Co. v. Stebick, 40 Wash.2d 599, 603-04, 245 P.2d 217 (1952).
[18] 2 Washington State Bar Ass'n, Real Property Deskbook § 27.12(2)(e), at 27-123 (3d ed.1996) (citing Carraher v. Bell, 7 Wash. 81, 34 P. 469 (1893)).
[19] No issue has been raised on appeal concerning the trial court's calculation of the arrearages in its judgment. We therefore do not address that issue.