IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
DIVISION THREE

| | | |
|---|---|---|
| YAKIMA AIR TERMINAL - McALLISTER FIELD, an agency of the City of Yakima and County of Yakima, Washington, | ) ) ) ) ) | No. 29306-8-III |
| Respondent, | ) ) | |
| v. | ) ) | |
| M.A. WEST ROCKIES CORPORATION, a Nevada corporation, | ) ) ) | UNPUBLISHED OPINION |
| Appellant. | ) ) | |

SIDDOWAY, A.C.J. — After fact-finding that we asked be done by the trial court, M.A. West Rockies Corporation's challenge to its eviction from airport ramp space it leased from Yakima Air Terminal at McAllister Air Field is before us again for decision. Based on the trial court's supplemental findings, it is evident that the airport commenced its unlawful detainer action at a time when West had cured the breach as to which it had received notice. Because the evidence does not support essential elements of unlawful detainer—that the tenant has failed to correct a breach following notice—the lease was improperly deemed forfeited and the writ of restitution was improperly issued. We

reverse the court's judgment and amendment to judgment and remand for further proceedings.

PROCEDURAL BACKGROUND

Yakima Air Terminal-McCallister Field filed a complaint for unlawful detainer against M.A. West Rockies in March 2010. An unlawful detainer show cause hearing was held in May 2010 at which the trial court ruled in the airport's favor and entered its findings of fact, conclusions of law, and order directing the issuance of a writ of restitution and judgment.

West appealed and challenged its eviction. It argued that in light of the payments it had made and how it believed they had been applied by the airport, it had not been in default and eviction was improper.

In January 2012, we filed an initial unpublished opinion, *Yakima Air Terminal— McAllister Field v. M.A. W. Rockies Corp.*, noted at 166 Wn. App. 1005 (2012). We explained that we were unable on the existing record to resolve the appeal because we did not know what the court came to believe about two key factual disputes. The first key dispute that was not addressed by the court's findings was whether the airport had applied a security deposit by West that it was holding in the first half of March 2010 as itemized in a March 15 document entitled "Notice of Application of Deposit Towards Unpaid Rent" that the airport served on West, or whether it had continued to hold the amount in trust, as a deposit. Clerk's Papers (CP) at 86. The second was whether a $2,920.56

payment tendered by West was tendered on Friday, March 26, as West contended, or on the following Monday, March 29, as alleged by the airport's complaint and suggested by some of its evidence.

We remanded the case for entry of additional findings and conclusions, with final disposition to await further proceedings. *Yakima Air*, slip op. at 16-17.

The trial court reviewed additional declarations, heard argument from counsel, and entered findings in answer to our questions in June 2013. Counsel for West then filed the trial court's findings with us. The answers are sufficient to resolve the appeal.

## ANALYSIS

The decisive issue is whether eviction was improper because West had cured the breach of the lease as to which it received the required notice.

Relief under the unlawful detainer statute requires: (1) the tenant's breach, (2) notice to the tenant of the existence of a breach with an opportunity to correct, and (3) failure by the tenant to correct the breach. RCW 59.12.030(4); *see also Wilson v. Daniels*, 31 Wn.2d 633, 643, 198 P.2d 496 (1948). It is undisputed that between January and March 26 or 29 West missed several monthly rental payments required by its lease but that it had also made several unscheduled payments to the airport in an effort to cure its breaches. What was in dispute was whether it had cured its breach in the manner required and the time allowed.

3

Our first uncertainty in earlier deciding the case was whether the airport had applied a $3,000 security deposit from West that was in its hands on March 15 to unpaid rent and expenses, or whether it had instead retained it as a security deposit. There was conflicting evidence. Additional payments were made by West on March 22 and 24, and it was impossible to determine the status of West's obligations following those payments without knowing what had happened with the $3,000 security deposit in the airport's hands on March 15.

In response to our first question, "Did the airport apply the $3,000 security deposit reimbursement payment that West made in the first half of March 2010 as itemized in its March 15 notice of application of deposit or did it hold it as a deposit?" *Yakima Air*, slip op. at 11, the trial court responded with the finding, "The [airport] did not apply the $3,000 deposit described in its March 15, 2010 Notice of Application of Deposit and M.A. West's $3,000 security deposit remained held as the deposit at all times material up to and after the May 20, 2010 hearing." CP at 380.

With this answer, and as explained in more detail in our earlier opinion, we are able to determine that the status of rents and deposits after applying payments made by West on March 22 and 24 was as follows:

| | |
|---|---|
| Rent owed: | $5,451.32 less $3,104.74 = $2,346.58. |
| Finance charges: | $51.36 plus additional accruals. |
| Attorney fees and costs: | $754.50 in fees and $45.00 in service costs due. |
| Deposit account: | $3,000.00 remaining from early March. |

4

No. 29306-8-III
*Yakima Air Terminal-McAllister Field v. M.A. West Rockies Corp.*

*Yakima Air*, slip op. at 7 (citing Report of Proceedings at 44).

Our second uncertainty concerned whether a final payment tendered by West was made on the afternoon of Friday, March 26, or the following Monday, March 29. We determined in our prior opinion that given the time and manner of the airport's service of its notice of default, West had until March 28 to cure.[1] In response to our second question, "Did West tender its $2,920.56 payment on March 26 or 29?" *id.* at 12, the trial court responded with the finding, "West tendered to [the airport] its $2,920.56 payment on March 26, 2010." CP at 380.

Based on the status of rents and deposits previously recognized and set forth above, payment by West of $2,920.56 on March 26 would have more than covered the rent that it owed. *Yakima Air*, slip op. at 7. The airport's finance administrator nonetheless refused the payment as untimely and returned it to West, based on the advice of counsel (which was based, in turn, on a misunderstanding of how the March 15 payment was applied). The airport then filed its unlawful detainer action on March 30, alleging that West's tender of rent that it refused was made on March 29—too late, given the time to cure required by its notice of default.

---

[1] We stated, "[T]he parties did not dispute that in light of the 10-day cure period provided by the notice of default, West had 10 days following service of the notice to cure a default in the payment of rent. The parties are also agreed that because the notice was mailed the time to cure was extended—by one day, as provided by RCW 59.12.040, and by three days, by the terms of the lease—thereby giving West until March 28 to make its payment." *Yakima Air*, slip. op. at 8.

5

Given the trial court's supplemental findings, it is evident that West had cured its default in payment of monthly rent due under the lease within the time provided by the notice of default. The airport therefore had no basis on which to refuse West's tender and, with respect to West's liability for monthly rent, at least, the elements of an unlawful detainer action did not exist when the airport filed its action on March 30. The only remaining issues are first, whether the airport could and had declared a default for West's failure to pay legal fees and costs identified in its March 15 notice of application of deposit; and second, if it could declare a default for nonpayment of those fees and costs, whether it had given West a sufficient time to cure.

Since the airport had not applied West's $3,000 deposit to the attorney fees and service costs identified in the notice of application of deposit served on March 15, West continued to owe them. The parties' lease imposed an obligation on West for such costs, stating that "after receipt of notices and as an additional condition to avoid forfeiture, LESSEE shall pay LESSOR's costs and expenses, including attorney's fees, for the preparation and service of [notices of default]." CP at 20. But before West's failure to pay such fees could constitute a breach, the lease required that West receive notice of the amount of fees incurred for which it was liable. And before its breach of failing to pay the fees could constitute an uncured default giving rise to an action for unlawful detainer, the airport was required to give West notice of the breach and the opportunity to cure required by statute or, if longer, by its lease. For breaches other than the payment of

6

monthly rent, the parties' lease entitled West to written notice "setting forth the particular default claimed" and a 30-day period to cure. *Id.*

The airport did not provide West with notice of its liability for the fees and costs until it mailed an invoice on March 15. It never served West with a notice of breach for failure to pay the fees; to the contrary, it served West with the notice of application of deposit erroneously advising it that the fees and costs had been satisfied out of West's security deposit.[2]

Nor could West's failure to restore the security deposit provide a basis for the airport's commencement of the unlawful detainer action on March 30. To begin with, the security deposit had not *in fact* been applied to anything; it was still in a trust account. So there was no need *in fact* to restore it. And even if it could be argued that West committed a breach by failing to respond to the airport's mistaken demand that it restore the deposit, West would still be entitled to a particularized notice of default identifying

---

[2] The notice of application of deposit stated that the $3,000 West had paid in early March to replenish its security deposit had been applied by the airport "as follows":
1.      $754.50 for attorney fees incurred by Yakima Air Terminal in the preparation of notices regarding application of deposit.
2.      $45.00 for service of process of notices regarding application of deposit[.]
[3].    $2,200.50 to unpaid rent owed.
CP at 86. The notice went on to say that West was "REQUIRED to, within five (5) days, deposit such sum of $3,000 with Yakima Air Terminal to return the total deposit held by Yakima Air Terminal to $3,000," pursuant to the parties' agreements. *Id.* (boldface omitted).

7

that breach and giving it the 30 days permitted to cure breaches other than those for payment of rent.[3]

In conclusion, the March 26 payment by West more than covered its defaults in payment of monthly rent. Its only other breach under the lease at the time the unlawful detainer action was commenced was its failure to pay attorney fees and costs but it had not received a notice of default identifying those breaches or providing it with what would have been a 30-day period to cure. The elements of unlawful detainer were not satisfied.

West asks that we reverse the judgment of the superior court "and remand the case to the trial court with directions that M.A. West is to be restored to the leased property." Br. of Appellant at 26. But under RAP 12.8 it is the trial court, not this court, that determines appropriate restoration or restitution where property is transferred or taken in compliance with a judgment that is subsequently reversed. The rule provides:

> If a party has voluntarily or involuntarily partially or wholly satisfied a trial court decision which is modified by the appellate court, the trial court shall enter orders and authorize the issuance of process appropriate to restore to the party any property taken from that party, the value of the property, or in appropriate circumstances, provide restitution. An interest

---

[3] Attorney fees may sometimes be characterized as rent, but whether they are turns on the language of the lease. *Daniels v. Ward*, 35 Wn. App. 697, 707, 669 P.2d 495 (1983). The clause defining rent in this case states that "LESSEE promises and agrees to pay rent to LESSOR at the rate of $1,853.00 per month for the leased premises, made in advance on or before the 10th day of the each month." CP at 11. This is the only clause that defines rent in any way. It cannot be contended under this lease that payment of attorney fees was subject to the three-day cure period provided for rent.

in property acquired by a purchaser in good faith, under a decision subsequently reversed or modified, shall not be affected by the reversal or modification of that decision.

RAP 12.8. The Washington Supreme Court has construed RAP 12.8 as requiring practitioners and courts to look to the common law of restitution to determine the postreversal remedy. *Ehsani v. McCullough Family P'ship*, 160 Wn.2d 586, 159 P.3d 407 (2007). In *Ehsani*, the court proceeded to look to *Restatement of Restitution* § 74 (1937). We note that the equivalent provision of the current version of the *Restatement* is *Restatement (Third) of Restitution and Unjust Enrichment* § 18 (2011).

We reverse the trial court's "Order Directing Issuance of Writ of Restitution and Judgment" and its "Amendment to Order Directing Issuance of Writ of Restitution and Judgment Dated June 7, 2010." We remand for entry of a judgment that West was not guilty of unlawful detainer of the premises, that it was unlawfully evicted therefrom, that its lease was not forfeited, and that the airport was not entitled to a writ of restitution and immediate possession. The trial court shall also award West its reasonable attorney fees and court costs incurred in the trial court in accordance with the parties' lease and, pursuant to RAP 12.8, shall enter orders and authorize the issuance of process appropriate to restore West to the leased premises; the value of the leased premises; or, if appropriate, shall provide restitution.

West has requested an award of attorney fees and costs on appeal. It relies on paragraph 27 of the lease, which provides that "[i]in the event of litigation to enforce the

9

rights and obligations hereunder . . . the prevailing party shall be entitled to its reasonable attorney fees in addition to court costs." CP at 22. Under RCW 4.84.330, the prevailing party is entitled to attorney fees for actions on a lease where the lease provides for such an award. A party may request reasonable attorney fees on appeal under RAP 18.1. West is the prevailing party on appeal. We award it attorney fees and costs subject to compliance with RAP 18.1(d).

A majority of the panel has determined that this opinion will not be printed in the Washington Appellate Reports but it will be filed for public record pursuant to RCW 2.06.040.

_____
Siddoway, A.C.J.

WE CONCUR:

_____
Brown, J.

_____
Kulik, J.