**INTERSTATE RESTAURANTS, INC.,**
Appellant,

v.

**The HALSA CORPORATION,**
Appellee.

**No. 6322.**

District of Columbia Court of Appeals.

Argued Oct. 10, 1972.

Decided Aug. 30, 1973.

---

Edward H. Kerman, Washington, D.C., with whom Albert D. Misler, Washington, D.C., was on the brief, for appellant.

Milton Eisenberg, Washington, D.C., with whom Patricia Roberts Harris, Washington, D.C., was on the brief, for appellee.

Before KELLY, GALLAGHER and HARRIS, Associate Judges.

PER CURIAM:

After extensive negotiations, a detailed agreement entered into in 1961 gave appellant, Interstate Restaurants, Inc. (Interstate), a 21-year leasehold in property owned by appellee, The Halsa Corporation (Halsa). Pursuant to the lease, Interstate commenced the operation of a restaurant, a coffee shop, and a cocktail lounge in the Skyline Inn on I Street in southwest Washington.

The relationship between the landlord and the tenant deteriorated. Approximately nine years after the period of the lease began, Halsa filed a complaint for possession of the premises. The action was predicated on multiple alleged breaches of the lease.

After a trial before the court, judgment for possession and for attorneys' fees was entered for the landlord. Interstate challenges the judgment on several theories. Appellant argues that its actions did not constitute breaches of the lease, or alternatively that Halsa had waived its right, or is estopped, to rely on any violation as the basis for a possessory action. Interstate also asserts that even if it did breach the terms of the lease, any such breach was insufficient to entitle Halsa to declare a forfeiture. Further, Interstate contends that the trial court erred in refusing to admit evidence which it offered in an effort to establish that Halsa had failed to perform its obligations under the lease.[1]

In comprehensive findings of fact and conclusions of law, the trial judge found a series of contract breaches, and concluded appellee (landlord) was entitled to possession of the premises, as well as certain money damages (rent due) and attorneys' fees and costs as provided in the lease.[2] Principally among the breaches found was the tenant's failure to operate the restaurant during times required by the agreement, e.g., on Saturday afternoons and Sundays, there being a provision in the lease for additional rent based upon percentages of gross sales. The court found, moreover, that this default had not been corrected within the grace period allowed following the default notice, "and further [appellant had] not proceeded with reasonable diligence or good faith to commence to do so."[3] In so finding, the court concluded that, particularly in view of the

---

1. The breaches charged to Halsa by the tenant related essentially to alleged heating and air conditioning inadequacies, and to drafts and water leaks in periods of bad weather. The trial court ruled that the tenant could introduce evidence as to the landlord's alleged breaches if such evidence was related to the breaches asserted by the landlord. Evidence as to unrelated alleged breaches by the landlord was not admitted.

2. We need not discuss the award of counsel fees beyond saying that we see no reason to disturb it, and therefore, it is approved.

3. The court found other less significant breaches but concluded that the failure to operate the restaurant on days specified in the lease, even if it were the only uncorrected default, was sufficient to support the result reached.

"no waiver" clause in the lease, no waiver had occurred; and that the essential element of detrimental reliance not being present, the court saw no reason to apply the doctrine of equitable estoppel.

■ Our review of the record shows these findings to be supported by substantial evidence and we see no error of law in application to the facts. Freas v. Gitomer, D.C.App., 256 A.2d 573, 574 (1969); D.C. Code 1972 Supp., § 17–305(a).

■ As to the covenants in the agreement, this commercial lease was negotiated by counsel on behalf of clients manifestly experienced in their phases of the commercial world. The trial court correctly concluded that the covenants in the lease were independent.[4] Nowhere in the agreement do we find any contrary intent disclosed. Certainly the agreement cannot be said to display an affirmative intention that the covenants should be considered as dependent rather than independent.

■ It is settled law that unless a contrary intention is expressed, the covenants in a lease are independent. Thompson v. Harris, 9 Ariz.App. 341, 452 P.2d 122 (1969); Rock County Savings and Trust Co. v. Yost's Inc., 36 Wis.2d 360, 153 N.W.2d 594 (1967); 3 Thompson on Real Property § 1115 (1959); 6 Williston, Contracts § 890 (3d ed. 1962); Restatement, Contracts § 290 (1932). Where covenants are independent, nonperformance by one party does not excuse the other party from the need to satisfy his obligations. Roth v.

Golden Slipper Restaurant & Catering, 167 Pa.Super. 558, 76 A.2d 475 (1950); Mitchell v. Weiss, 26 S.W.2d 699 (Tex.Civ.App. 1930); 3 Williston, Contracts § 890 (3d ed. 1962); Restatement, Contracts § 290 (1932).

■ But, says appellant, the court should have permitted the introduction of all evidence on purported breaches by appellee under the doctrine that forfeiture of a contract will not be enforced where the party seeking the forfeiture has not strictly performed his obligations under the contract. In support, appellant looks to Javins v. First National Realty Corporation, 138 U.S.App.D.C. 369, 428 F.2d 1071, cert. denied, 400 U.S. 925, 91 S.Ct. 186, 27 L.Ed.2d 185 (1970), where the court held that with respect to urban rental housing, there is implied by operation of law a warranty of habitability measured by the Housing Regulations of the District of Columbia. In so deciding, the court stated that leases of urban dwelling units should be interpreted and construed like any other contract. Using this as authority, appellant contends that the previously established rule on the independence of covenants in leases should not control here.

*Javins* involved the application of the Housing Regulations to urban dwelling units. The rationale of that decision does not, in our view, extend to a commercial lease such as here involved, even assuming that the breaches alleged were of the nature of those fundamentally underlying *Javins.*

---

4. An additional factor in support of this conclusion is the inclusion in the lease of Section 13 of the Supplemental Agreement dated September 1, 1963, which provides:

> All payments of rental and additional rental required to be made by the Tenant under the Lease, as modified by this agreement, shall be made by Tenant without any set-off or deduction whatsoever. Tenant agrees that it will not interpose, and hereby waives *its right to interpose, any plea of recoupment, counterclaim, off-set or claim for* deduction in any action or proceeding to recover rent or *additional rent, or for pos-*

*session, or for the eviction of Tenant from the demised premises,* but any valid claim which Tenant may have against Landlord shall be prosecuted by Tenant in a separate and independent action. (Emphasis added.)

While this provision applies only to "recoupment, counterclaim, off-set or claim for deduction in any action or proceeding [by the landlord] to recover rent," and there were no such claims involved here, it is nevertheless an added indication that the parties intended the covenants in the lease to be independent.

Appellant does not contend that the Housing Regulations themselves apply to the premises it occupied. Yet in *Javins* the requirements of those Regulations were an important factor in the court's decision. It is one thing for a court to enforce in urban rental housing an implied warranty of habitability in accordance with Housing Regulations but quite another to intrude into established business practices in the hotel-restaurant commerce, as delineated in a negotiated lease. This case is quite removed from the urban housing setting of *Javins*.

We find no error by the trial court with respect to its rulings on the admissibility of evidence relating to breaches by the landlord.

■ Accordingly, in all respects the judgment is

Affirmed.[5]

HARRIS, Associate Judge (concurring in part and dissenting in part):

All members of the court's division agree that the rulings below were free of reversible error. In my view, however, appellee's motion to dismiss the appeal should be granted.

The proceeding was one for possession. When the trial court declared the lease to be terminated and entered judgment for possession (plus attorneys' fees in the amount of $10,000), a stay was ordered pending appeal subject to certain conditions. They were: (1) that Interstate operate its various food and beverage facilities during all of the time periods specified in the lease; (2) that Interstate make future rental payments in advance; and (3) that Interstate post a supersedeas bond in the amount of $20,000.

Ten days were allowed by the trial court for compliance with those conditions. None was met.[1] Interstate effectively moved out on the tenth day (October 31, 1970) and terminated all of its operations at the hotel.[2] No further rent ever was tendered to the landlord.

In the process of moving its personalty from the Skyline Inn, Interstate sought to maintain an appearance of leaving involuntarily. I consider that effort to be a transparent fiction, and would hold that Interstate voluntarily abandoned the premises. Accordingly, I would grant the motion to dismiss and vacate the judgment below for mootness,[3] further remanding the case to the Superior Court with instructions to dismiss the complaint.[4]

---

5. There is pending before us a motion to dismiss this appeal on the ground of mootness arising from an alleged voluntary abandonment of the leased premises by appellant, which motion we deny.

1. The hours of operation remained the same as those which were held to warrant termination of the lease. No supersedeas bond was filed, nor did Interstate seek a reduction in its amount. Rent for the ten days was tendered by a check which proved to be worthless. (The amount was paid later, but after the ten days had expired.)

2. A special meeting of Interstate's Board of Directors was held on October 27, four days before the ten days expired. The Board then passed the following resolution:
   That the officers and directors of the corporation . . . are hereby authorized and empowered to vacate the premises . . . and to sell the furniture, fixtures and equipment.

3. Dietz v. Miles Holding Corp., D.C.App., 277 A.2d 108 (1971); Gaddis v. Dixie Realty Co., D.C.App., 248 A.2d 820, remanded on other grounds, 136 U.S.App.D.C. 403, 420 F.2d 245 (1969); Zindler v. Buchanon, D.C.Mun.App., 61 A.2d 616 (1948); Price v. Wilson, D.C.Mun.App., 32 A.2d 109 (1943).

4. United States v. Munsingwear, 340 U.S. 36, 71 S.Ct. 104, 95 L.Ed. 36 (1950); Atkins v. United States, D.C.App., 283 A.2d 204 (1971); see Gaddis v. Dixie Realty Co., *supra*, 248 A.2d at 821. In moving for a dismissal on the grounds of mootness, Halsa recognized that its judgment for attorneys' fees could not be sustained unless the merits of the appeal were reached. However, Interstate now has no assets, and Halsa consented to the vacating of the judgment for attorneys' fee if its motion were granted.