[No. 5280-0-III. Division Three. March 8, 1984.]

FIRST UNION MANAGEMENT, INC., *Appellant,* v. DENNIS L. SLACK, ET AL, *Respondents.*

*Ronald E. Cox, Robert B. Mitchell, Jr.,* and *Preston, Thorgrimson, Ellis & Holman,* for appellant.

*Joseph Woolett,* for respondents.

McINTURFF, J.—First Union Management, Inc. (First Union) appeals from a Superior Court judgment in its action against Dennis and Linda Slack (the Slacks) for unlawful detainer. The Slacks cross–appeal. The primary issue is whether the trial court had subject matter jurisdiction to hear the Slacks' counterclaim in the unlawful detainer action. We hold the court lacked such jurisdiction and, therefore, reverse that portion of the judgment awarding the Slacks damages on their counterclaim and denying First Union its costs and attorney's fees.

First Union owns and manages the shopping center in which the Slacks lease space and operate a laundromat. On January 22, 1981, First Union served the Slacks with a

notice to pay rent or vacate. The notice advised them rent and merchant's association dues of $1,946.93 were due and owing. The notice and an attached letter also advised of the following breaches of the covenants in the parties' lease: (1) 7 out of 25 washing machines and 1 out of 10 dryers were out of order, (2) the premises was dirty and otherwise not properly maintained,[1] and (3) the Slacks had not deposited with First Union certificates of insurance policies and evidence of premium payments. First Union required the Slacks to pay within 10 days and to cure the other defaults within 30 days or, alternatively, to vacate the premises.

On January 26, 1981, Dennis Slack tendered two checks to First Union totaling $1,539.70.[2] On the same day he wrote First Union stating "All areas of default are currently being addressed and corrected." In the letter, he claimed only three of the machines were then inoperable and repairs on broken machines were made as promptly as the parts arrived. He also stated missing ceiling tiles had been replaced, several of the fluorescent lights had been deactivated to comply with conservation requests, the laundry was cleaned daily, and insurance notification would be sent.

By letter of February 25, 1981, First Union notified the Slacks it was terminating their right of possession to the leased premises. It then cashed the Slacks' checks dated January 26, together with a February 9, 1981 check for the February rent. On March 20, 1981, First Union served on the Slacks a 12–day summons and complaint for unlawful detainer as authorized by statute. The Slacks filed an answer and five counterclaims on March 27, 1981. First Union did not file a reply but it did initiate and participate in discovery relating to the counterclaims. During this time

---

[1]The letter specified the ceiling sagged, tiles from the ceiling were missing, fluorescent lights were out of order, the floor was filthy, trash containers were not properly maintained, the walls were stained, and the tubs were dirty.

[2]The difference between the amount demanded in the notice to pay rent or vacate and the amount tendered by the Slacks is annual dues which were not yet payable.

852

the Slacks tendered checks for the rent due each month, but First Union returned them uncashed because it did not wish to prejudice its rights under its unlawful detainer action.

At the end of October 1981, First Union retained new counsel who promptly moved to dismiss the Slacks' counterclaims as outside the trial court's subject matter jurisdiction in an unlawful detainer action. First Union also moved to amend its complaint. Both motions were denied on November 18, 1981. The court determined (1) the notice to pay rent or vacate was insufficient to comply with statutory notice requirements for defaults other than for payment of rent, (2) the Slacks had substantially cured the defaults in rent, and (3) the insufficiency of the foregoing notice did not permit First Union to maintain the unlawful detainer action. The order allowed First Union to proceed as in a civil action for breach of contract.

The day after the court order, First Union served the Slacks with a second notice to pay rent and other charges due in the amount of $9,914.35 for the months of March through November 1981. The Slacks did not pay this amount. On December 10, 1981, First Union served Dennis Slack with a new 12–day summons and complaint for unlawful detainer. The Slacks filed an answer and counterclaim. In its reply, First Union affirmatively alleged lack of subject matter jurisdiction over the counterclaims.

The March and December actions initiated by First Union were consolidated for trial. Judgment was entered for First Union on its second unlawful detainer action and for the Slacks on their counterclaim for damages resulting from First Union's failure to respond to inquiries regarding the assignment of their lease to a prospective purchaser.[3] First Union's judgment for rent was set off from the Slacks'

[3]The lease provided:
"Tenant shall not have the right to . . . assign this Lease . . ., without the prior written consent . . . of the Landlord, which consent may be freely withheld."

judgment on the counterclaim, leaving the Slacks with a net judgment in their favor for $50,433.23. Each party was ordered to bear their own costs and attorney's fees.

## The Appeal
### A. Subject Matter Jurisdiction

First Union contends the court erred in denying its motion to dismiss the Slacks' counterclaims for lack of subject matter jurisdiction. It relies on the general and well settled rule that counterclaims may not be asserted in an unlawful detainer action because the Legislature's intent in creating this action was to establish a summary procedure for determining the limited issue of the landlord's right of possession. *Granat v. Keasler,* 99 Wn.2d 564, 570, 663 P.2d 830 (1983); *Young v. Riley,* 59 Wn.2d 50, 52, 365 P.2d 769 (1961).

The Slacks argue the general rule does not apply because (1) First Union's initial complaint allegedly did not adhere to the statutory form, and (2) a determination of their counterclaims is essential to a determination of the claim of unlawful detainer. We reject both arguments.

RCW 59.12.070 provides:

> The plaintiff in his complaint, which shall be in writing, must set forth the facts on which he seeks to recover, and describe the premises with reasonable certainty, and may set forth therein any circumstances of fraud, force or violence, which may have accompanied the said forcible entry or forcible or unlawful detainer, and claim damages therefor, or compensation for the occupation of the premises, or both; in case the unlawful detainer charged be after default in the payment of rent, the complaint must state the amount of such rent.

First Union's complaint fully complied with the statute's requirements. In any event, the alleged deficiencies could not enlarge the court's jurisdiction. The appropriate procedure upon proof of a critical deficiency in the summons or complaint would have been for the court to dismiss the unlawful detainer action.

Nor is the Slacks' counterclaim one a court in an

unlawful detainer action has jurisdiction to entertain. The purpose of an action for unlawful detainer is to determine the right of possession. *Little v. Catania,* 48 Wn.2d 890, 893, 297 P.2d 255 (1956); *Motoda v. Donohoe,* 1 Wn. App. 174, 175, 459 P.2d 654 (1969). Our court has permitted a counterclaim in such an action only when the counterclaim is based on facts which excuse a tenant's breach. *Foisy v. Wyman,* 83 Wn.2d 22, 515 P.2d 160 (1973) (the affirmative defense of breach of implied warranty of habitability goes directly to the issue of rent due and owing); *Income Properties Inv. Corp. v. Trefethen,* 155 Wash. 493, 506, 284 P. 782 (1930) (rent cannot be recovered where landlord by his own acts has deprived the lessees of the beneficial use of the property); *Andersonian Inv. Co. v. Wade,* 108 Wash. 373, 378–79, 184 P. 327 (1919) (if facts exist which excuse a defendant's breach, the defendant ought to be permitted to show them before ouster). Here, resolution of the Slacks' damage claim is not necessary to determine the right of possession. First Union's alleged failure to timely respond to the request for permission to assign the lease did not deprive the Slacks of the beneficial use of the property or excuse their duty to pay rent or comply with the other conditions of the lease.

The court found First Union "apparently abandoned its pursuit of a summary remedy" by engaging in substantial discovery aimed at defending the counterclaim and preparing to present all claims between the parties on the merits. While not directly stated, the inference is First Union, by its subsequent conduct, converted this action into a general civil action, one in which the court had jurisdiction to hear counterclaims. The court's findings ignore the rule that subject matter jurisdiction may be challenged at any time and cannot be waived. CR 12(h)(3);[4] *United States v. Mis-*

---

[4]CR 12(h)(3) reads:

"*Whenever* it appears by suggestion of the parties or otherwise that the court lacks jurisdiction of the subject matter, the court shall dismiss the action." (Italics ours.)

*sissippi Vly. Barge Line Co.,* 285 F.2d 381, 387 (8th Cir. 1960). The special summons and complaint employed was insufficient to give the court jurisdiction of the parties in a general proceeding. Our Supreme Court has stated: "Having obtained . . . limited jurisdiction [to determine unlawful detainer], the court could not transform the special statutory proceedings into an ordinary lawsuit, and determine the issues and grant relief therein as though the action was a general proceeding." *Little,* at 893.

Consequently, we hold the Superior Court had no jurisdiction to hear the Slacks' counterclaim. In arriving at our decision, we especially note this language cited in *Little*:

> "As much as we regret to reverse a case for what on first impression may be called a technicality, on the other hand the very thing which instills in the mind of the thinking person a confidence and respect for the courts is the fact that they jealously guard against acting in any matter where jurisdiction may be lacking and is not apparent upon the face of the record."

*Little,* at 893 (quoting *YWCA v. LaPresto,* 169 S.W.2d 78 (Mo. Ct. App. 1943)).

### B. Cure of the Defaults

First Union next assigns error to the findings and conclusions of the court that no basis existed for the first unlawful detainer action. The court found the Slacks paid First Union rent for January and February 1981, and First Union accepted these payments. It concluded First Union's acceptance waived the breaches outlined in the January notice to pay rent or vacate. The court also found the Slacks' maintenance of the laundromat's equipment did not constitute a breach of the lease; likewise, the alleged breaches for failure to maintain the premises had either been corrected or were nonexistent. We uphold the foregoing findings and conclusions.

First Union argues it never accepted any rent from the Slacks after the notice of the default because it did not cash the checks until after notifying the Slacks, pursuant to the lease, that their right to possession was terminated. It

reasons the checks were accepted not as rent but as partial damages. We disagree. First Union never advised the Slacks it was holding and cashing their checks for the purpose of collecting damages. In these circumstances, the Slacks were justified in assuming First Union accepted their payment as rent, and thereby waived any default as to prior unpaid rent. First Union's reliance on *Hartmeier v. Eiseman,* 34 Wn.2d 225, 208 P.2d 918 (1949) is misplaced. *Hartmeier* does not deal with the question presented here, *i.e.,* whether the summary remedy of unlawful detainer is proper where the lessor accepts money from the tenant following notice of default in rent without advising the tenant that he does not consider the payment as a cure of the default.

Pursuant to a nonwaiver clause in the parties' lease, First Union did not waive the nonmonetary breaches by taking the rent payment.[5] *Wilson v. Daniels,* 31 Wn.2d 633, 641, 198 P.2d 496 (1948). However, the notice of default in an unlawful detainer action gives the tenant an alternative, *i.e.,* either correct the default or vacate the premises. Here, there was substantial evidence the Slacks remedied the alleged breaches in equipment and premises maintenance and proof of insurance within the 30 days allowed, or that the alleged shortcomings did not, in fact, constitute breaches of the lease.[6]

### C. Damages

First Union also argues the Superior Court erred in refusing to award it double the amount of all the rent

---

[5]The parties' lease contains the following express stipulation:

"Acceptance of rent . . . shall not be construed to be a waiver of any preceding or existing breach other than the failure of tenant to pay the particular rental so accepted . . ."

[6]First Union contends the Superior Court abused its discretion in determining the merits of its complaint on a pretrial motion. If there was error, it was harmless because the court redetermined the merits following trial. See findings of fact 34 through 37.

found due. The court limited statutory double damages to the period from December 1981, the month the second unlawful detainer action was commenced, to May 1982, the date of trial. First Union relies on RCW 59.12.170, which states in part:

[I]f the alleged unlawful detainer be after default in the payment of rent, [the court shall] find the amount of any rent due, and the judgment shall be rendered against the defendant guilty of the . . . unlawful detainer *for twice the amount* . . .

(Italics ours.) In *Queen v. McClung,* 12 Wn. App. 245, 248, 529 P.2d 482 (1974), we held "[t]he statute clearly requires the doubling of all unpaid rent, whether it accrues before or during the period the tenant is found to be in unlawful detainer."

 While our language in *Queen* is broad and appears controlling, the unique circumstances of this case provide a compelling basis for distinguishing it from previous authority. Here, the Slacks tendered the rent to First Union each month from March through November 1981. First Union refused these tenders because it did not wish to prejudice its rights under its first unlawful detainer action. The Superior Court subsequently determined that no basis existed for that first action, and we have affirmed that determination. Since it was First Union's mistaken belief that the Slacks were in unlawful detainer that prompted it to refuse the tenders of rent, the court will not reward it for its mistake by assessing the Slacks statutory double damages for this period. Accordingly, the Superior Court's denial of double rent for the months of March through November 1981 is affirmed.[7]

---

[7]First Union argues that electric charges paid by it should be included in the amount of rent doubled for the period December 1981 through May 1982. They rely on the following section of the lease:

Tenant agrees to pay for all charges for [utilities] . . . Provided, however, if such utility charges are billed to Landlord, Tenant shall pay Landlord's charges, as additional rent . . .

"[T]he statutory double rent and damage right of a landlord against his tenant is not a right which the landlord may successfully invoke, except by a very clear

## D. Attorney's Fees

Finally, First Union alleges the court erred when it concluded "Neither party should be awarded costs or attorney's fees since both parties prevailed in part." The parties' lease provided for such fees and costs.[8] Since we have held the Superior Court should have dismissed the Slacks' counterclaim, the Slacks cannot be considered a prevailing party. As a result, we hold reasonable attorney's fees for time below and on appeal should be awarded First Union.[9] Because the fees requested are large when viewed relative to the trial's length and the damages incurred, a hearing with the opportunity for cross examination is necessary to assess what is a reasonable fee under the circumstances. Therefore, we remand to the Superior Court for a hearing and an award of reasonable attorney's fees and costs to First Union.

### THE CROSS APPEAL

The Slacks argue the Superior Court erred when it found them guilty of unlawful detainer in the second action. First, they contend First Union's notice to pay rent or vacate was defective because it contained the following paragraph:

---

showing of such right." *Walker v. Myers,* 166 Wash. 392, 397, 7 P.2d 21 (1932). Here, the ordinary meaning of rent is enlarged by the parties' agreement. No evidence is cited the Legislature intended a similar expanded meaning when it used the term "rent" in RCW 59.12.170, *supra.* Therefore, we affirm the Superior Court's refusal to treat the electric charges as "rent" subject to doubling under the statute.

[8]The lease provides:

"In the event suit is brought for recovery of the Leased Premises . . ., Tenant shall pay to Landlord all expenses incurred in the prosecution of such suit, including reasonable attorney's fees to the extent permitted by law."

[9]First Union only requests fees for its second counsel's time. Since it appears much of the time incurred by its first counsel involved work on the counterclaims prior to First Union's motion to dismiss for lack of jurisdiction, such time probably would not be included as a reasonable attorney's fee. However, we need not decide this issue since fees for the first counsel's time are not requested.

> This notice is given with the express reservation of rights by owner as to other defaults under the lease which have existed and may exist, and with a full reservation of all rights in any pending litigation.

In their view, this paragraph eliminated their option to pay rent or vacate, and, therefore, the notice could not support an unlawful detainer action. We disagree. The paragraph constituted a reservation of rights by First Union under its earlier suit for unlawful detainer which the court had indicated it was going to treat as a general civil action. The Slacks still had the option to pay the rent from March through November and thereby avoid the effect of the second action. The notice was proper.

Second, the Slacks urge this court to find the second notice improper because it gave them only 3 days' notice to pay the rent. They contend the parties' lease provided for 10 days' notice, and they point out the January notice gave them 10 days. The provision in question reads:

> In the event of any failure to pay any rent within ten days after it shall become due hereunder . . . then Landlord may . . . terminate this Lease or terminate Tenant's right to possession of the Leased Premises . . .

We do not agree with the Slacks' interpretation. This clause is not ambiguous. It does not deal with the notice required in an unlawful detainer action. It only states the landlord may not exercise its rights thereunder unless the tenant has failed to pay rent within 10 days of the date it is due. The Slacks do not allege First Union terminated their lease or their right of possession before the 10–day period elapsed. Hence, the provision does not apply. The fact First Union gave the Slacks more time than statutorily required in the first notice does not change the parties' lease.[10]

---

[10]In the section of their brief entitled "Issues", the Slacks question whether a tenant may be held to be in unlawful detainer for failure to pay rent when the tenant tendered the monthly payments, but the landlord refused them. Since they do not support the issue by argument or citation to authority, we need not address it. *Transamerica Ins. Group v. United Pac. Ins. Co.*, 92 Wn.2d 21, 29, 593 P.2d 156 (1979).

860

Finally, the Slacks maintain the court erred in denying their request for attorney's fees. We need not address this issue, given our holding that the Slacks' counterclaim should have been dismissed. Under our holding, the Slacks are not a prevailing party entitled to fees.

The portion of the judgment of the Superior Court awarding the Slacks damages on their counterclaim and denying First Union costs and attorney's fees is reversed; the remainder of the judgment is affirmed. The cause is remanded for a determination of reasonable attorney's fees and the amount of additional damages to First Union caused by any continued possession of the leased premises by the Slacks following the entry of the Superior Court judgment.

MUNSON, C.J., and GREEN, J., concur.