**SOUTH FORKS SHOPPING CENTER, INC., Plaintiff and Appellant,**

**v.**

**Yahya DASTMALCHI, individually and d/b/a Prestige Fashion Shoes, Defendant and Appellee.**

**Civ. No. 890018.**

Supreme Court of North Dakota.

Sept. 26, 1989.

Vaaler, Gillig, Warcup, Woutat, Zimney & Foster, Grand Forks, for plaintiff and appellant; argued by Sandra B. Dittus, Grand Forks.

Shaft, Reiss, Ingstad & Shaft, Grand Forks, for defendant and appellee; argued by Jack W. Ingstad, Grand Forks.

MESCHKE, Justice.

South Forks Shopping Center sued to evict Yahya Dastmalchi, doing business as Prestige Shoes, from its shopping center. The county court enforced an agreement by South Forks to lease Dastmalchi other space and dismissed the eviction claim. We reverse.

On July 9, 1988, South Forks and Dastmalchi agreed upon a settlement about unpaid rents which cancelled his store lease in the shopping center, settled their litigation, and barred Dastmalchi's counterclaims. This "AGREEMENT TO SETTLEMENT OF PAST CLAIMS AND CONTINUATION OF TENANCY IN RELOCATED SPACE FOR UP TO FIVE YEARS" said:

"1.) That Yahya Dastmalchi pay South Forks $3500.00 cash in hand before temporarily reopening for business in the present store location for not longer than through July 16, 1988.

"2.) that Yahya Dastmalchi pay South Forks an additional $200.00 a day starting Monday July 11, 1988 for five days, until $1000.00 more cash is paid and be totally moved out of present store space by 7:00 AM July 18, 1988.

"3.) if conditions #1 & #2 are completed timely, South Forks will lease to Yahya Dastmalchi ... on a temporary basis, a 1236 square foot store space between the Diet Center and Cost Cutters Hair Care Center for Seven hunderd [sic] ($700.00) dollars a month to include rent and common area costs until 1202 square feet of the present Nelson's Hobby House store can be made available to relocate into.

"4.) provided rents are paid in a current and customary manner, South Forks will lease the above mentioned 1202 square foot store for up to five years on a month to month basis at $700.00/month for rent and common area charges.

"In the event Yahya Dastmalchi fails to fully complete steps 1 & 2 timely, this agreement which includes settlement of claims at less than 50% ($8666.22, + ½ of July rent and common area charges = $426.57, plus legal costs for $3500. + $1000.) shall become null and void and South Forks shall proceed for settlement of present claim in full."

Howsoever timely, Dastmalchi paid the agreed amounts, vacated his store space, and moved into the "temporary" space.

On August 2, Dastmalchi paid $700 by leaving a cashier's check at South Forks' office. At the same time, he picked up his rental statement which listed a zero balance on July 29 and showed $700 due on August 1. Still, disagreement arose about when rent was due. South Forks claimed it was due on July 18 and on the 18th of each following month. Dastmalchi claimed it was due on August 1 and on the first of each following month. The settlement had not specified a date for payment of rent.

On August 25, South Forks wrote Dastmalchi that he was in default, that he had breached the settlement agreement, and that South Forks "has no further obligation to lease" the Nelson space to him. Claiming that South Forks had anticipatorily breached the agreement by not holding the Nelson space for him, Dastmalchi paid no rent after August 2.

On October 11, South Forks sued to evict Dastmalchi. In his answer, Dastmalchi claimed that South Forks breached the settlement agreement "by allowing another tenant, in August, to occupy the space which was to be held" for him and that "due to said breach ... [South Forks] was not entitled to additional rent until it made available" the Nelson space to him. Dastmalchi also plead that "a Contract action has been commenced in ... District Court to resolve the dispute between the parties." Dastmalchi requested dismissal of South Fork's eviction complaint and "further relief as the Court may deem just."

At trial, Dastmalchi testified that his rent had been due on the first day of each month in the past and that he believed that was still true. The South Forks manager testified that, sometime after the 18th of July, he told Dastmalchi that the rent had been due on the 18th. The manager explained that the rental statement given to Dastmalchi was inaccurate. Thus, the evidence about timely payment of the first

rent for the temporary space was conflicting.

The county court ruled that the rent was due on the first of each month, since it was the "custom" of South Forks to bill its tenants on the first; that Dastmalchi had paid rent "in a timely and customary manner"; and that South Forks "violated" the settlement by letting another tenant have the Nelson space. The judgment decreed that South Forks was "entitled to no additional rent until it provides the store space previously occupied by the Nelson's Hobby House, as outlined in the Agreement of July 9, 1988," and dismissed the eviction action. Dastmalchi stayed in the temporary space without paying rent.

On appeal, South Forks argued that the dismissal was clearly erroneous because rent was at least two months past due. South Forks argued that allowing Dastmalchi to remain in the temporary space without paying rent unjustly enriched him.

Dastmalchi argued that the decision was not clearly erroneous; that he had satisfied the conditions of the settlement, entitling him to the Nelson space; and that, by notifying him that he would not get the Nelson space, South Forks had anticipatorily breached the contract. Dastmalchi quoted NDCC 9–01–16:

> "*Enforcement of obligations—Prerequisites.* Before any party to an obligation can require another party to perform any act under it, he shall fulfill all conditions precedent thereto imposed upon himself and must be able, and shall offer, to fulfill all conditions concurrent so imposed upon him on the like fulfillment by the other party, but if one party to the obligation gives notice to another before the latter is in default that he will not perform the same upon his part and does not retract such notice before the time at which performance upon his part is due, such other party is entitled to enforce the obligation without previously performing or offering to perform any conditions upon his part in favor of the former party."

Arguing that South Forks had not fulfilled "all conditions concurrent," Dastmalchi insisted that "it was proper for [him] to discontinue making any further rent payments until he was able to enforce South Forks' obligations." According to Dastmalchi, since he "owed no rent, due to the breach, the action for eviction was not proper."

Although South Forks did not question the power of the county court, this court is "required to take notice of jurisdictional questions relating to subject matter whether raised by any of the parties or not." *In Re Estate of Brudevig*, 175 N.W.2d 574, 577 (N.D.1970), overruled on other grounds, *Liebelt v. Saby*, 279 N.W.2d 881 (N.D.1979). Since the 1976 constitutional amendment creating a "unified judicial system," the trend has been to improve the county courts and to enlarge their jurisdiction and powers. *See* N.D. Const. art. VI, § 1; 1981 N.D.Laws, ch. 319; 1983 N.D. Laws, ch. 352; 1985 N.D.Laws, ch. 272, § 31 and ch. 338; 1987 N.D.Laws, ch. 375, § 1; and *Matter of Estate of Binder*, 366 N.W.2d 454 (N.D.1985). Nevertheless, the authority of county courts continues to be circumscribed by statute. NDCC 27–07.1–17. There are several statutes relevant here.

■ Within limits, county courts are empowered to hear eviction actions:

> "An action for eviction from real property irrespective of value when the amount demanded therein for rents and profits or damages does not exceed ten thousand dollars."

NDCC 27–07.1–17(1)(d). A summary action in county court to recover possession of real estate is authorized when "[a] lessee, ... fails to pay his rent for three days after the same shall be due." NDCC 33–06–01(4). The summary nature of this eviction action is tailored by narrow restrictions:

> "*Eviction actions not joinable with other actions—Exception—When counterclaims only interposable.* An action of eviction cannot be brought in a county court in connection with any other action, except for rents and profits accrued or for damages arising by reason of the defendant's possession. No counterclaim

can be interposed in such action, except as a setoff to a demand made for damages or for rents and profits."

NDCC 33–06–04. The reasons for the summary nature of an eviction action have been explained:

"The purpose of the unlawful detainer statutes is to provide the landlord with a summary, expeditious way of getting back his property when a tenant fails to pay the rent.... If a defendant were allowed to assert affirmative defenses or cross-claims which were irrelevant to the right of immediate possession, the summary character of the proceedings would be lost."

*Nork v. Pacific Coast Med. Enterprises,* 73 Cal.App.3d 410, 140 Cal.Rptr. 734, 735 (1977). *See First Union Management, Inc. v. Slack,* 36 Wash.App. 849, 679 P.2d 936, 939 (1984). Because the summary nature of the eviction action bars counterclaims (except money offsets), the county court was not authorized to grant Dastmalchi affirmative relief.

■ The county court exceeded its powers when it decreed specific performance of the settlement. A county court is not authorized to contrive equitable remedies in most civil actions, apart from probate, trust, and assigned matters. NDCC 27–07.1–33 and 27–07.1–17; *Matter of Estate of Jones,* 288 N.W.2d 758, 760 (N.D.1980). NDCC 27–07.1–33 directs that, when

"either a cross-claim or counterclaim ... asks for affirmative *equitable relief,* the county court shall proceed no further with a determination of the rights of the parties provided that the pleading in excess of jurisdiction is accompanied by a motion requesting that the case be transferred to the district court of the same county as the court from which the transfer is requested.... *In the absence of a motion the cross-claim or counterclaim must be stricken and the case must proceed as though no counterclaim or cross-claim had been pleaded.*" (Emphasis added).

Dastmalchi did not move to transfer this action to district court, since a contract action between South Forks and Dastmalchi was already pending there. Therefore, the county court should not have decreed specific equitable relief by compelling South Forks to lease the Nelson space to Dastmalchi. The effect of the decree allowed Dastmalchi use of the temporary space without paying rent. The county court lacked power to do this.

Dastmalchi's claim for equitable relief from South Fork's breach should not have been decided in county court, but should have been left for the pending district court action. Therefore, we reverse the judgment of the county court insofar as it decrees equitable relief against South Forks.

The county court had to decide whether to evict Dastmalchi for nonpayment of rent. Was Dastmalchi relieved from his obligation to pay rent on occupied space because South Forks breached another part of the settlement? The county court needed to probe deeper to determine the scope of Dastmalchi's obligation to pay rent for the temporary space.

Generally, breach of a promise by a landlord, short of expelling his tenant, has not excused the tenant from paying rent. 3 Thompson on Real Property § 1115 (1980); 3A Corbin on Contracts § 686 (1960). This has been so because "[t]he law of landlord and tenant was crystallized before the rules as to mutually dependent promises in contracts in general were developed, ..." 3 Thompson on Real Property § 1115, p. 379. This concept of independent clauses in leases may be shifting somewhat due to the increasing influence of contract law on interpretation of leases. *Id.* at 376. *See* 6 Williston on Contracts §§ 890 and 890A (1962). Note the difference in treatment between Restatement of Contracts § 290 (1932) and Restatement (Second) of Contracts § 231, comment e (1981). In North Dakota, a lease has long been subject to the general rules for interpreting a contract. *Anderson v. Blixt,* 72 N.W.2d 799, 804 (N.D.1955); *Agra–By–Products, Inc. v. Agway, Inc.,* 347 N.W.2d 142, 146 (N.D. 1984). The important inquiry is what the contracting parties intended by their agreement.

■ Generally, promises and covenants in a lease are construed to be dependent or independent according to the intent which the parties have expressed. 3 Thompson on Real Property § 1115. Dependent promises are those which depend on the prior performance of an act or condition, and until the act or condition is performed, the promisor is not liable to an action on his promise. *Id. See Bishop Ryan High School v. Lindberg*, 370 N.W.2d 726, 729 (N.D.1985). Only when they are to perform concurrent acts may a tenant excuse himself by relying on the failure of the landlord. 3 Thompson, *supra.* Thus, Dastmalchi was not justified in withholding his rent for the space occupied unless payment of rent was conditioned upon South Fork's agreement to turn over the Nelson space to him. Their agreement did not expressly make those promises conditioned upon one another.

"It is settled law that unless a contrary intention is expressed, the covenants in a lease are independent." *Interstate Restaurants, Inc. v. Halsa Corporation*, 309 A.2d 108, 110 (D.C.App.1973). "Where covenants are independent, nonperformance by one party does not excuse the other party from the need to satisfy his obligations." (Citations omitted). *Id. See also Ringwood Associates v. Jack's of Route 23*, 153 N.J.Super. 294, 379 A.2d 508, 514 (1977) ("[L]ease covenants, unless expressly made dependent, have been considered independent."); *Frog, Inc. v. Dutch Inns of America, Inc.*, 488 A.2d 925, 929–30 (D.C.App.1985) ("[C]ovenants in a lease are deemed to be independent unless a contrary intention is expressed in the lease itself."); *Enos v. Foster*, 155 Cal.App.2d 152, 317 P.2d 670, 672 (1957) ("[C]ovenants in leases are held to be mutually independent unless the lease expressly or impliedly makes them conditional.") Dastmalchi's duty to pay rent was not expressly connected to South Fork's agreement to lease him the Nelson space when it "can be made available to relocate into." The settlement did not expressly authorize Dastmalchi to withhold his rent for any reason.

■ A county court might properly refuse an eviction where the landlord has breached a condition which is, in fact, concurrent with the tenant's obligation to pay rent. Thus, for example, a breach of an express or implied condition of habitability of a residence may justify a tenant in not paying some or all of the rent. 3A Corbin on Contracts § 686, p. 242 (1960). *Compare* NDCC 47–16–13, 47–16–13.1, and 47–16–13.3. But, in this commercial context, South Fork's agreement to lease future space is more analogous to an agreement to repair. This latter promise has been widely held to be separate and independent from the agreement to pay rent in a commercial lease. Thus, an Illinois appellate court has said: " 'Even if an express covenant to repair has been given, the usual construction is that the covenants of the lessor and lessee are independent, and therefore the lessee may not treat the lessor's failure to repair as a basis for stopping rent payments. (Citation.)' " *McArdle v. Courson*, 82 Ill.App.3d 123, 37 Ill.Dec. 402, 405, 402 N.E.2d 292, 295 (1980) citing *Yuan Kane Ing v. Levy*, 26 Ill. App.3d 889, 326 N.E.2d 51, 54 (1975). The *McArdle* court stated that it was "unaware of any authority in this state for permitting a commercial tenant to both remain in possession and refuse to pay rent when a landlord breaches a covenant of the lease, unless the terms of the lease so provide." 37 Ill.Dec. at 405, 402 N.E.2d at 295. *See also* 6 Williston on Contracts § 890A (3rd ed. 1962). One scholar has flatly declared: "Covenants under a commercial lease are independent." 3 Thompson, *supra*, at 378. We conclude that, generally, a commercial landlord's agreement to lease different space is independent of rental due for the lease of present space, unless the agreement expressly makes the promises concurrent and conditional. This agreement did not.

We affirm the trial court's finding, made from conflicting evidence, that rent was due on the first of each month. Nevertheless, Dastmalchi was behind in rent. When South Forks sued to evict him on October 11, he had not paid rent since August 2.

Only if the settlement agreement expressly excused his rental payment for a breach could Dastmalchi's failure to pay rent have been overlooked.

Since rent was unpaid, South Forks was entitled to eviction. Therefore, we reverse the dismissal of the eviction action and remand for further proceedings consistent with this opinion.

ERICKSTAD, C.J., and LEVINE, GIERKE and VANDE WALLE, JJ., concur.