[No. 14930-7-III.   Division Three.   February 29, 1996.]

WILLIAM D. HEAVERLO, ET AL., *Appellants*, v. KEICO
INDUSTRIES, INC., ET AL., *Respondents*.

*Michael R. Tabler* and *Schultheis & Tabler*, for appellants.

*William R. Bishin* and *William R. Bishin, Inc., P.S.*, for respondents.

SWEENEY, C.J. — Washington's unlawful detainer statute (RCW 59.12) authorizes a limited summary proceeding to determine the right to possession of property. *Skarperud v. Long*, 40 Wn. App. 548, 550, 699 P.2d 786 (1985). Counterclaims and setoffs are generally not permitted in an unlawful detainer action. *Skarperud*, 40 Wn. App. at 550. A lessee may, however, assert a counterclaim or a setoff, if the lessee's covenant to pay rent is dependent upon a covenant that the lessor has breached. *Skarperud*, 40 Wn. App. at 550.

The dispute here centers on a farm development lease. The term of the lease was four years with a right to renew for another four years. The lessee, Keico Industries, Inc. (Keico), developed an irrigated farm during the first four-

year term. When Keico failed to make the last rent payment on the first four-year term, the lessors, William D. Heaverlo and Charlotte M. Heaverlo (the Heaverlos), sued for unlawful detainer. Keico counterclaimed contending the Heaverlos had breached a number of covenants, the most significant of which was Keico's right to renew the lease for a second four-year term. We are asked to decide whether the lessee's covenant to pay rent, on ground it occupies, is dependent on the lessors' covenant to renew the development lease, and whether the failure to renew the lease is therefore properly asserted in defense of an unlawful detainer action. We conclude it is not and reverse.

FACTS

On December 12, 1990, the Heaverlos leased undeveloped land to Keico. The lease anticipated that Keico would develop the property for farming—400 acres during the first year and 485 acres during the second year of the lease. The lease obligated Keico to pay rent on only that land actually developed and under irrigation. The first four-year period started on December 15, 1990. Keico was to pay rent of $100 per acre for the developed land and all taxes, water and electricity. The second four-year period called for Keico and the Heaverlos to agree on the rent. Rent was due on April 1 and September 1 of each year. Improvements to the land reverted to the Heaverlos at the end of the lease.

In 1991, Keico installed three half circle, center-pivot irrigation systems and one full circle; they covered about 356 acres. In 1992, it developed two additional circles which irrigated approximately 207 acres. Further development on one of the circles, C-5, was stopped when the Army Corps of Engineers claimed that a portion of the circle was protected by the Clean Water Act. Although the agency later concluded that federal law did not apply, Keico refused to further develop C-5 because of cost. In 1993, Keico did develop an additional 75 acres in another circle.

On July 28, 1994, Keico notified the Heaverlos that it would exercise the renewal option. The Heaverlos, however, refused to negotiate the rent for the second four-year term. On August 26, the Heaverlos served a notice of intent to forfeit and cancel lease. They claimed Keico had breached the lease because it had failed to: (1) develop approximately 885 acres as promised in the lease; (2) pay pasture rent; (3) repair a private water line that caused damage to the Heaverlos' land; (4) maintain gates and fences; (5) keep the property free of unusable machinery and debris; and (6) comply with the prohibition against unauthorized subleases. Keico, in response, refused to pay the September 1994 rent—the final rent payment on the first four-year term. The Heaverlos then sent a second notice of intent to forfeit and cancel lease on September 7, based on Keico's refusal to make the September 1994 rent payment. It notified Keico that the lease would be terminated if the breaches were not remedied within 15 days. Keico did not pay the rent within 15 days.

The Heaverlos sued for unlawful detainer on September 28. Keico responded with a general denial, affirmative defenses and counterclaims. It alleged, among other things, breach and anticipatory breach of the renewal clause. On December 2, Keico sued the Heaverlos in a separate action for specific performance of the renewal clause.

The unlawful detainer case was tried to the bench. At the conclusion of the Heaverlos' case, Keico moved to dismiss. The court denied the motion. But during Keico's defense case, after a conference in chambers, the judge dismissed the Heaverlos' unlawful detainer action without prejudice.

The Heaverlos appeal dismissal of their unlawful detainer action. Keico cross-appeals claiming the unlawful detainer action should have been dismissed with prejudice. Both parties claim the right to attorney fees. We accepted review as a matter of right. The trial court, by dismissing the Heaverlos' unlawful detainer action, even without prejudice, effectively denied the Heaverlos the

expedited summary disposition afforded by the unlawful detainer statute. RCW 59.12; RAP 2.2(a)(3).

## DISCUSSION

■ **Failure To Assign Error.** Keico first challenges the Heaverlos' right to appeal because the Heaverlos failed to set out specific assignments of error and a statement of issues. RAP 10.3(g) (requiring separate assignment of error for each finding); RAP 10.3(a)(3) (requiring statement of each error). It urges us to dismiss the appeal. But the Heaverlos' assignment of error is clear—the trial court should not have dismissed their unlawful detainer action. And Keico has adequately responded to that assignment of error. We will therefore review the claimed error. *Podiatry Ins. Co. of Am. v. Isham*, 65 Wn. App. 266, 268, 828 P.2d 59 (1992) (allowing review when other party had no difficulty responding to the challenge).

■ **Nature of an Unlawful Detainer Action.** RCW 59.12 provides a limited summary proceeding to preserve the peace by providing an expedited method for resolving the right to possession of property. *Skarperud*, 40 Wn. App. at 550. To protect the summary nature of an unlawful detainer proceeding, other claims, including counterclaims, are generally not allowed. *Munden v. Hazelrigg*, 105 Wn.2d 39, 45, 711 P.2d 295 (1985). There are, however, exceptions. If the counterclaim, affirmative defense, or setoff excuses the tenant's failure to pay rent, then it is properly asserted in an unlawful detainer action. *Munden*, 105 Wn.2d at 45. Put another way, issues unrelated to possession are not properly part of an unlawful detainer action. *See First Union Management, Inc. v. Slack*, 36 Wn. App. 849, 854, 679 P.2d 936 (1984) (claims not properly asserted if not related to possession).

In *First Union*, we considered a counterclaim based on the landlord's failure to timely respond to a request by the lessee to assign the lease. The lease required the landlord's consent before assignment. *First Union*, 36 Wn. App. at 852 n.3. The landlord sued for unlawful detainer.

The trial court considered the tenant's counterclaim and awarded a setoff. *First Union*, 36 Wn. App. at 852-53. We held that the landlord's failure to respond to the tenant's request for permission to assign the lease did not deprive the tenant of the beneficial use of the property. The claim, therefore, was not properly assertable in the unlawful detainer action. *First Union*, 36 Wn. App. at 854-55. Similarly, our Supreme Court in *Munden* disapproved of a counterclaim unrelated to the issue of possession. There, a rock retaining wall failed. The resulting rock slide damaged the tenant's car. The landlord and tenant then had a dispute over payment for the damage to the car and the tenant either stopped or reduced his rent payment. The landlord sued for unlawful detainer. The tenant counterclaimed for damage to the automobile. *Munden*, 105 Wn.2d at 41. The Court held that the counterclaim did not excuse the tenant's obligation to pay rent. *Munden*, 105 Wn.2d at 45.

In contrast, the Supreme Court has approved a counterclaim for breach of the implied warranty of habitability. *Foisy v. Wyman*, 83 Wn.2d 22, 515 P.2d 160 (1973). In *Foisy*, the tenant refused to pay a portion of the monthly rent because the premises were not habitable. The house was plagued with a number of problems, including lack of heat, no hot water tank, broken windows, a broken door, water running through the bedroom, leaking bath fixtures, broken water pipes and termites. *Foisy*, 83 Wn.2d at 24-25. The Court held that the lease violations went directly to the issue of rent and were therefore properly assertable in an unlawful detainer action. *Foisy*, 83 Wn.2d at 24-25, 31-32.

Keico asserts a number of defenses which it claims excuse nonpayment of rent. Its primary argument, and the one that the parties focus on in this appeal, is that the obligation to pay rent was dependent upon the Heaverlos renewing the lease, or, at least, entering into negotiations for rent on the lease renewal. Keico refused to pay the September 1994 rent payment only after the Heaverlos

refused to discuss renewal of the lease for the additional four years. The trial court agreed with Keico:

> the first thing you have to follow is to sit down and negotiate what that rental price was on the renewal, once the renewal notice is sent, and when that's not done, then I don't feel that the other side has the right to come in and say: We're going to forfeit it.
>
> . . . .
>
> . . . [Does] the landlord, regardless of what happened on that clause to renew [have] the right to forfeit, a right to possession now, and I say I don't think he does.

Keico's justification for refusing to pay the rent rests on the nature of the lease here. It is a development lease. Keico points out that this lease anticipated that Keico would spend substantial sums of money to transform sagebrush and sand into productive agricultural property. Because it spent those substantial sums, Keico contends that its obligation to pay rent should be dependent on the Heaverlos' agreement to renew the lease. Keico incurred the development expense in anticipation of the four-year renewal. The argument, however, ignores what for us is the clear language of the lease agreement. Keico was only entitled to exercise the option to renew "if Lessee . . . is not in default of any other terms, covenants or conditions of this Lease at the date set for commencement of the renewal term . . . ."

The lease agreement here did not provide that payment of the September 1994 rent was conditioned on the Heaverlos entering into negotiations for the renewal. The reverse is true. If the rent was not paid, the Heaverlos were not obligated to proceed with negotiations to renew the lease. Moreover, Keico was only required to pay rent on that portion of the Heaverlos' property which it had developed and actually occupied. This fact is significant in an unlawful detainer action, because the only issue is whether the rent has been paid on the property the lessee occupies. And, if rent has not been paid, the question is

whether there is any legal justification for nonpayment. *Andersonian Inv. Co. v. Wade*, 108 Wash. 373, 378, 184 P. 327 (1919). Keico's argument focuses on this last question.

Keico relies primarily on our opinion in *Esmieu v. Hsieh*, 20 Wn. App. 455, 580 P.2d 1105 (1978), *aff'd*, 92 Wn.2d 530, 598 P.2d 1369 (1979), for the proposition that if the lessor's conduct frustrates the fundamental purpose of the lease, the obligation to pay rent is excused. *Esmieu* is distinguishable.

*Esmieu* also involved an agricultural development lease. The Esmieus agreed to lease land to Hsieh to develop irrigated farms. *Esmieu*, 20 Wn. App. at 457. The Esmieus' land, however, was already encumbered by leases to Charles Maiden. Hsieh negotiated terminations of the Maiden leases directly with Maiden. The Esmieus also had to sign the Maiden termination agreements. *Esmieu*, 20 Wn. App. at 458. By the time Hsieh sent the termination agreements to the Esmieus, however, they had had a change of heart about the project. They began to drag their feet on completing the development lease. *Esmieu*, 20 Wn. App. at 458. In response, Hsieh conditioned his next lease payment on the Esmieus' compliance with the development lease.

The first important distinction between *Esmieu* and this case can be drawn here. Unlawful detainer was not an issue in *Esmieu*. Hsieh was not only not in possession of the property, he could not take possession because the Esmieus refused to cooperate in terminating the Maiden leases.

The Esmieus then tried to default Hsieh out of the lease because of his failure to pay the rent. *Esmieu*, 20 Wn. App. at 459. Hsieh defended arguing that his covenant to pay rent was dependent on the Esmieus' covenant to cooperate in securing both irrigation and termination of the Maiden leases. He claimed the covenants were therefore dependent. *Esmieu*, 20 Wn. App. at 459.

We held that the Esmieus' deliberate frustration of the purpose of the lease—development of the property—justi-

fied Hsieh's conditional tender of the lease payment. *Esmieu*, 20 Wn. App. at 461. Keico asks us to make the logical leap that the Heaverlos' conduct here parallels that of the Esmieus', and therefore frustrates the essential purpose of this lease agreement. We decline that invitation.

The Esmieus' conduct effectively denied Hsieh access to the ground. That did not occur here. The Heaverlos did not deny Keico access to the property. Keico had proceeded with extensive agricultural development and actually occupied the property.

Keico may have been prevented from further development by the Army Corps of Engineers' designation of a portion of the property as wetlands. But the Heaverlos had not demanded rent for any of that land; nor would they have been entitled to rent for the undeveloped property.

In this unlawful detainer action, then, Keico was only being asked to pay rent on that portion of the property which it had actually occupied and was farming. In *Esmieu* we categorized the lessee's, Hsieh's, default as "technical." It was due to Hsieh's "uneasiness" which followed the Esmieus' failure to place him in possession. *Esmieu*, 20 Wn. App. at 461. Hsieh said essentially, "I will pay the rent, but you, the Esmieus, must first comply with your obligations and facilitate access to the property on which I am paying rent."

■ Whether covenants in a contract are independent or dependent depends on the contract as a whole. *Esmieu*, 20 Wn. App. at 460. The Esmieus' agreement among themselves to block, or at least stall, Hsieh's development essentially prevented Hsieh from gaining possession of the property on which he was being asked to pay rent. *Esmieu*, 20 Wn. App. at 460.

Clearly, some counterclaims and affirmative defenses are appropriately asserted in an unlawful detainer action. *Munden v. Hazelrigg*, 105 Wn.2d 39, 45, 711 P.2d 295 (1985). But the Heaverlos' failure to renew is not one of

them. Keico occupied the property. And the Heaverlos did not interfere with Keico's possession of that portion of the property for which rent was demanded.

The Heaverlos have done little more than insist on the express terms of the option to renew. That provision obligates that Keico be in compliance with other provisions of the lease agreement before demanding that the Heaverlos renew the lease. In short, Keico has to pay the rent. Keico tries to elevate the additional four-year extension to the status of a dependent covenant. *Skarperud v. Long*, 40 Wn. App. 548, 551, 699 P.2d 786 (1985) (finding payment of rent independent of other breaches in contract that may arise to damage claims). It is not.

Keico also claims that the Heaverlos failed to tell Keico that a portion of the property slated for development was protected wetlands. Again, if there was a misrepresentation as to the suitability of land for agricultural development, it would not excuse payment of rent on property already developed, occupied and being farmed. Keico's position is essentially that it should not have to pay for property it currently occupies and farms because it was precluded from developing other property. We disagree. *Skarperud*, 40 Wn. App. at 551.

## CONCLUSION

In sum, we adhere to the statutory purpose for an unlawful detainer action. That purpose is to provide a speedy and summary resolution of possession and necessarily payment of rent. *Young v. Riley*, 59 Wn.2d 50, 52, 365 P.2d 769 (1961). To permit a counterclaim setting up various defenses which do not relate to the specific ground occupied, and on which rent is due, would be to undermine that laudable statutory purpose. *Young*, 50 Wn.2d at 52 (finding the summary procedural remedy is an integral part of the right itself, thus setoffs and counterclaims which would defeat that remedy are generally not permitted).

The order of the trial court dismissing the Heaverlos' unlawful detainer action is reversed and the case is remanded with instructions to reinstate it.

MUNSON and THOMPSON, JJ., concur.